**WEST COAST MACARONI MFG. CO., Inc., et al. (CALIFORNIA–VULCAN MACARONI CO., Intervener) v. BROCK, Director of Agriculture of California et al.**

No. 4239–L.

District Court, N. D. California.
Sept. 6, 1938.

Morgan J. Doyle, Walter M. Gleason, and J. Joseph Sullivan, all of San Francisco, Cal., and C. T. Walton, of Fresno, Cal., for plaintiffs and intervener.

U. S. Webb, Atty. Gen., W. R. Augustine, Deputy Atty. Gen., and Mathew O. Tobriner and Jos. Wahrhaftig, both of San Francisco, Cal., for defendants.

Before WILBUR, Circuit Judge, and ST. SURE and LOUDERBACK, District Judges.

LOUDERBACK, District Judge.

The Statute involved, the Processed Foodstuffs Marketing Act, supra, was allegedly designed to correct abuses in certain processed foodstuffs industries. The Act provides in substance for the establishment of standards of quality for the products specified and for the proper marking and labeling of such foodstuffs. It also provides for the prohibition of certain specified unfair trade practices. The Act covers the macaroni, tamale, and baking industries, exempting from its operation the cracker products industry.

Section 3 (a) of the Act, p. 2259, designates the Director of Agriculture as the person to enforce the provisions of the Act, and authorizes him to issue and enforce Marketing Orders regulating the processing , and marketing of processed foodstuffs by processors and distributors within this State.

Section 4 (c), p. 2260, directs that the Director shall find as a basis for any marketing order that the order will tend to (1) eliminate the use of unfair practices and the sale of processed foodstuffs below cost, (2) prevent the deception of the purchasing public and the development of monopoly, (3) promote free and open competition, and (4) encourage the consumption of superior qualities of such foodstuff.

Section 5, p. 2260, authorizes the Director to provide for an advisory board to assist him.

This litigation was precipitated by an order of the Director of Agriculture, issued under this Act, setting up regulations for processors and distributors of macaroni products, titled "Marketing Order for Processors and Distributors of Macaroni Products". This Marketing Order set up regulations establishing an advisory board to assist the Director in the administration of the said Marketing Order, and selected certain persons as members thereof. It provided for assessments to defray necessary expenses for carrying out the administration of the provisions of the Act and Order. It further provided for a minimum cost survey for possible appending to the said Market Order, in meeting the provision which permitted the designation of prices. The Act authorized these provisions, as preliminary steps.

■ Plaintiffs, including the intervener, complain in the Bill that the Processed Foodstuffs Act purported and attempted to deprive the plaintiffs of their property; First, by fixing a minimum sale price under which no processor or distributor shall sell or offer to sell the said foodstuffs. The section covering this issue, section 5, paragraph (3), subdivision (h), p. 2261, provides: "* * * The director is authorized to prescribe methods * * * whereby rules and regulations may be established with respect to the modification of * * * filed open price schedules. The director may include, among other provisions for such filing of open price schedules the following: (1) Each processor or distributor in the industry shall file within a designated period from the date of the issuance of the processing and marketing order, either with the Department of Agriculture of the State of California or with the advisory board, a price list stating the prices at which he sells or offers to sell such processed foodstuff. In the event that the processor or distributor thereafter desires to change such price list, he shall file a revised price list with said department or with said board in the manner and at the time designated by such order." It will be noted that the Director "may" ascertain a minimum price and "may" append the same to the Marketing Order. Until this is done, and it has not been done in this case, there is no certainty it will be done, for the Act is not mandatory in this regard.

■ The plaintiffs claim that under the Act, hearings or investigations may be undertaken, whereby plaintiffs will be forced to disclose trade secrets. Section 12 (c) of the Act, p. 2266, provides: "For

the purpose of carrying out the purposes of this section, the director may hold hearings, take testimony, administer oaths, subpoena witnesses and issue subpoenas for the production of books, records or documents of any kind." But no investigations or hearings have been instituted requiring such disclosures. This provision is also discretionary.

The plaintiffs contend that processed foodstuffs could be shipped to distributors by out of the State processors and that the exemption given those who only distribute within the State would make it impossible for plaintiffs to compete successfully with out of State processors, for section 15 of the Act, p. 2267, provides: "The provisions of this act shall not be applicable to retail sales by retailers of processed foodstuffs but shall apply to any retailer to the extent that he engages in the processing or marketing of processed foodstuffs as defined in this chapter." But this contention assumes that a minimum sale price will be adopted and that the out of State processor can and will produce and sell the foodstuffs at a lower price than the said minimum sale price. None of these have taken place.

Other discretionary acts under the Processed Foodstuffs Act are complained of, but present the same issue.

The plaintiffs contend that the doctrines of Carter v. Carter Coal Co., 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160, and City Bank Farmers' Trust Co. v. Schnader, etc., 291 U.S. 24, 54 S.Ct. 259, 78 L.Ed. 628, are in point and that the cases hold that it is not necessary to wait until an impending illegal event actually occurs. However, in both of these cases, known, established regulations under the Statutes in question were considered by the court.

Here, however, the objections thus set forth are purely conjectural; the regulations may or may not be promulgated, and if so promulgated, may or may not be in violation of the Federal Constitution. Abrams v. Van Schaick et al., 293 U.S. 188, 55 S.Ct. 135, 79 L.Ed. 278; Commonwealth of Massachusetts v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078; Yazoo & Mississippi Valley R. R. Co. v. Jackson Vinegar Co., 226 U.S. 217, 33 S.Ct. 40, 57 L.Ed. 193; National Harness Manufacturers' Assoc. v. Federal Trade Commission, 6 Cir., 268 F. 705.

Section 5 of the Act, p. 2260, authorizes the Director to establish uniform grading and inspection of processed foodstuffs, to prohibit certain unfair practices, including rebating, gifts of the product, false or misleading advertising, false disparagement of competitors' goods, inducement of breach of an existing contract, malicious enticement of employees, and imitation of trademarks. These prohibitions are not directly challenged by plaintiffs. Moreover, similar police power regulations have been sustained by the courts. Central Lumber Co. v. South Dakota, 226 U.S. 157, 33 S.Ct. 66, 57 L.Ed. 164; Van Camp & Sons Co. v. American Can Co. et al., 278 U.S. 245, 49 S.Ct. 112, 73 L.Ed. 311, 60 A.L.R. 1060; International Harvester Co. v. State of Missouri, 234 U.S. 199, 34 S.Ct. 859, 58 L.Ed. 1276, 52 L.R.A.,N.S., 525.

Collection of assessments from members of an industry to defray expenses of a State instrumentality established under the state's police power, has been held valid. Brock v. Superior Court, 9 Cal.2d 291, 71 P.2d 209, 114 A.L.R. 127; Edwards v. United States, 9 Cir., 91 F.2d 767.

It is also claimed by plaintiffs that the Act unlawfully delegated legislative power to the Director of Agriculture, and to the advisory body he may appoint. "The Supreme Court has repeatedly held that the Congress may enact a general statute, setting up a definite standard of action, leaving to an administrative official or board the task of prescribing or interdicting particular courses of action within the field covered by the statute. So long as the administrative discretion is confined to effectuating clearly and definitely expressed policies and standards in the act, it does not constitute legislation." Edwards v. United States, 9 Cir., 91 F.2d 767, 785, and cases cited therein.

The Processed Foodstuffs Act itself lays down the primary standards, and delegates to others only the administrative powers to apply and make effective such standards. This is not an unconstitutional delegation of legislative powers. Hampton, Jr. & Co. v. United States, 276 U.S. 394, 48 S.Ct. 348, 72 L.Ed. 624; Brock v. Superior Court, 9 Cal.2d 291, 71 P.2d 209, 114 A.L.R. 127.

The plaintiffs are limited in their attack to the application of the statute to the

'factual situation now before the Court. Dahnke-Walker Milling Co. v. Bondurant, 257 U.S. 282, 42 S.Ct. 106, 66 L.Ed. 239.

The Court finds that the bill of complaint does not set forth facts to sustain the cause of action stated by plaintiffs.

Therefore, the temporary restraining order is vacated, the application for a temporary injunction is denied, and the proceedings are dismissed.